IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  08-cv-01852-WYD-KMT

PAUL OTENG; and
B.D. GOLDFIELDS, LTD.,

      Plaintiffs,

v.

GOLDEN STAR RESOURCES, LTD.; and
ST. JUDE RESOURCES, LTD.,

      Defendants.

---

## ORDER OF DISMISSAL

---

THIS MATTER came before the Court on a hearing on March 19, 2009.  At the hearing argument was taken on Defendants' Motion to Dismiss and Defendants' Motion for Costs, including Attorneys' Fees, and for Stay of Proceedings Pursuant to Fed. R. Civ. P. 41(d).  For the reason stated below, Defendants' Motion to Dismiss is granted as to certain arguments, and this case is dismissed.  Defendants' Motion for Costs, including Attorneys' Fees, and for Stay of Proceedings Pursuant to Fed. R. Civ. P. 41(d), is granted in part and denied in part.

I.    INTRODUCTION AND FACTUAL BACKGROUND

This is a shareholder derivative action and alternative direct corporation action against Canadian gold prospecting and mining corporations doing business in the United States and the Republic of Ghana, West Africa ("Africa").  The action relates to the ownership, operation and control of a gold mining concession in Ghana.  The

concession is described as the Adum Banso concession.  The Verified Complaint alleges that Defendants are making payments to a renegade shareholder Fifi Hayford to induce Hayford to help Defendants wrongfully acquire title or assignment of Goldfields' Adum Banso $7 billion dollar gold concession.  Plaintiffs seek a declaratory judgment, injunction and an accounting.

Plaintiff B.D. Goldfields ("Goldfields") is an alien corporation from Ghana. (Compl., ¶ 5(a)).  Plaintiff Paul Oteng ("Oteng") is a dual citizen of Ghana and the United States as a resident of Virginia.  (Comp. ¶ 1).  He is a shareholder in Goldfields. Defendant St. Jude Resources, Ltd. ("St. Jude") is an alien corporation organized under the laws of Canada and Plaintiffs allege that it has its principal place of business in Colorado.  (Compl., ¶¶ 8(a), 10).  Defendant Golden Star Resources, Ltd. ("Golden Star") is an alien corporation organized under the laws of Canada and Plaintiffs allege it has its principal place of business in Colorado.  (Compl., ¶ 9(a), 10).  In other words, the Verified Complaint alleges that Defendants are both alien corporations and citizens of the United States (in Colorado).  (Compl., ¶ 10.)

On November 6, 2008, Defendants filed a Motion to Dismiss and Memorandum in Support.  The motion seeks to dismiss this action pursuant to FED. R. CIV. P. 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)(6) for lack of subject matter jurisdiction under the alienage jurisdiction statute, lack of subject matter jurisdiction by virtue of Plaintiffs' lack of standing to pursue claims under Ghanian law, international comity among nations including recognition of Ghanian settlements and final judgments resolving all the claims in this case, and insufficiency of service of process and resulting lack of personal jurisdiction.

Defendants assert generally in their motion to dismiss that this is an action between foreign companies concerning properties in Africa and contracts governed by Ghanian law and that there is no real nexus with this jurisdiction.  Instead, it is argued that this case implicates Ghanian natural resources which already were litigated and resolved in Ghana several years ago.  Defendants assert that this case is merely an elaborate effort fabricated by a disgruntled shareholder to overturn the litigation in Ghana and decisions of the Ghanian government in respect to Ghanian natural resources.  Plaintiffs oppose the Motion to Dismiss, arguing that this Court has jurisdiction over this case and that the motion should be denied.

After taking briefing on the issue of whether the motion to dismiss should be converted to a motion for summary judgment since it attached matters outside the pleadings, I ruled by Order of January 5, 2009, that the motion would not be converted. Among other things, I noted in that Order that neither party wanted the motion converted, and that the majority of arguments made in the motion (the first, second and fourth arguments) do not rely on Rule 12(b)(6) but on other subsections of Rule 12.  As to the third argument in the motion, relating to international comity among nations, I stated in the Order that it would be deferred until the summary judgment phase.

I now turn to the remaining arguments in the motion to dismiss and then address the Motion for Costs, including Attorneys' Fees, and for Stay of Proceedings.

II.    ANALYSIS

A.    Defendants' Motion to Dismiss

There are three remaining arguments in the motion to dismiss.  The first two address subject matter jurisdiction and the third argument asserts that the case should

be dismissed as to Defendant St. Jude for insufficiency of service of process and

resulting lack of personal jurisdiction.  In their response to the motion to dismiss,

Plaintiffs agreed to the voluntary dismissal of St. Jude.  At the hearing, I dismissed

Defendant St. Jude.  I now clarify that St. Jude is dismissed from the case pursuant to

FED. R. CIV. P. 41(a)(1)(A)(i) since Plaintiffs sought to dismiss this Defendant before a

responsive pleading (in the form of an answer or a motion for summary judgment) was

filed.  I now turn to whether the Court has subject matter jurisdiction over Defendant

Golden Star.

> 1.   Whether The Court Has Subject Matter Jurisdiction Under the
>      Alienage Statute, 28 U.S.C. § 1332(a)(2), or under 28 U.S.C.
>      § 1332(a)(3)

The motion to dismiss argues that the Court lacks subject matter jurisdiction over

this case under the federal alienage diversity statute relied on in the Complaint, 28

U.S.C. § 1332(a)(2), as well as 28 U.S.C. § 1332(a)(3) which was cited in Plaintiffs'

response to the motion to dismiss.  Turning to my analysis, I first note that Defendants

rely on FED. R. CIV. P. 12(b)(1) in support of this argument.  Defendants are challenging

the facts upon which subject matter jurisdiction is based.  Under such a factual attack, I

am not bound by the allegations of the Complaint and have wide discretion to consider

affidavits and other evidence submitted by the Defendants to determine if jurisdiction

exists.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Further, I

"may not presume the truthfulness of the complaint's factual allegations."  *Id.* at 1003.

Turning to the merits of this argument, "diversity jurisdiction attaches only when

all parties on one side of the litigation are of a different citizenship from all parties on the

other side of the litigation."  *Depex Reina 9 Partnership v. Texas Intern. Petroleum*, 897

F.2d 461, 463 (10th Cir. 1990). "In the case of corporations, the corporation is a citizen of 'any State by which it has been incorporated and of the State where it has its principal place of business. . . .'" *Id.* (quoting 28 U.S.C. § 1332(c)); *see also Slavchev v. Royal Caribbean Cruises, Ltd.*, ___ F.3d ___, 2009 WL 606664, at *2 (4th Cir. 2009) ("corporation with its principal place of business in one of the United States and incorporated under the laws of a foreign state has dual citizenship for purposes of diversity"). I find, for the reasons stated below, that the motion to dismiss should be granted as to this argument because jurisdiction does not exist under either 28 U.S.C. § 1332(a)(2) or § 1332(a)(3).

a.　28 U.S.C. § 1332(a)(2)

The alienage statute provides in pertinent part as follows:

(a)　The district courts shall have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between --
. . .
(2) citizens of a State and citizens or subjects of a foreign state;

28 U.S.C. § 1332(a)(2).

The requirement of complete diversity applies to the alienage provision of § 1332(a)(2). *Depex Reina*, 897 F.2d at 465. Where aliens from foreign states are on both sides of the case, the requirement of complete diversity is lacking. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 569 (2004); *see also Gshwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir. 2000) (suit by Belgian citizen against a Kansas citizen and a Canadian citizen should have been dismissed for lack of subject matter jurisdiction because there was not complete diversity); *China Nuclear Energy Industry Corp. v. Anderson LLP*, 11 F. Supp. 2d 1256, 1260 (D. Colo. 1998) ("Because

China Nuclear is an alien and Anderson has partners who are aliens, the requirement of complete diversity does not exist").

In this case it is undisputed from the Complaint allegations that Plaintiff Goldfields is an alien corporation as a citizen of Ghana.  Further, the Complaint confirms that Defendants Golden Star and St. Jude are residents of Canada. Accordingly, on the face of the Complaint complete diversity does not exist under § 1332(a)(2).

Plaintiffs argue, however, that Defendant Golden Star is a citizen of both Colorado and Canada because it has its principal place of business in Colorado.  This does not matter for purposes of jurisdiction.  Even if Golden Star is a citizen of Colorado, it is undisputably also a citizen of Canada.  *See JP Morgan Chase Bank v. Traffic Stream (BVI)*, 536 U.S. 88, 91 (2002) ("'corporation of a foreign State is, for purposes of jurisdiction in the courts of the United States, to be deemed, constructively, a citizen or subject of such State'") (quotation omitted); Restatement (Third) of Foreign Relations Law of the United States § 213 (1986) ("For purposes of international law, a corporation has the nationality of the state under the laws of which the corporation is organized").  In other words, while an alien corporation may add the United States as an additional place of citizenship for diversity purposes if its principal place of business is in the United States, it does not lose its foreign citizenship based upon the location of incorporation.  *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2nd Cir. 2002); *Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2nd Cir. 1989); *Panalpina Welttransport GmbH v. Geosource, Inc.*, 764 F.2d 352, 354 (5th Cir.

1985). Instead, the corporation has dual citizenship for purposes of diversity. *Id*.

Accordingly, there is still a lack of jurisdiction because of a lack of complete diversity.

Further, even if I were to consider Golden Star's principal place of business, I find

that it would be in Ghana, not Colorado. The Tenth Circuit has adopted the total activity

test to make this determination, where a court looks at the total activity of the company

or the totality of the circumstances, "considering the character of the corporation, its

purposes, the kind of business in which it is engaged, and the situs of its operations."

*Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Amoco*

*Rocmount Co. v. Anshutz Corp*, 7 F.3d 909, 915 n. 2 (1993)). In this case, the

character and purpose of Golden Star is a mining company, almost all of the mining

operation is located in Ghana and the majority of employees are there.

Notably, the Tenth Circuit rejected two tests used by other Circuits, including the

"nerve center" test. *Amoco Rocmount*, 7 F.3d at 915. "Under the 'nerve center'"

approach, "'a corporation has a single principal place of business where its executive

headquarters are located.'" *Id.* (quotation omitted). While Plaintiffs refer to Colorado

being the "nerve center" of the corporation where the executives are calling the shots

regarding the claims at issue, this is not the operative test or controlling factor in this

Circuit.

Plaintiffs also argue that diversity jurisdiction exists under § 1332(a)(2) because

this is a shareholder derivative suit and diversity is determined by the citizenship of the

individual shareholder, not the corporation. In essence, Plaintiffs argue that Oteng as

the shareholder is the real party in interest, that Oteng is considered for purposes of

diversity only a citizen of the United States (even though he is also a citizen of Ghana), and that Goldfields is only a nominal party that does not defeat jurisdiction.

I first state that I find some merit to Plaintiffs' argument that for purposes of diversity jurisdiction, Oteng is considered a United States citizen and his dual citizenship dose not count in the diversity analysis. Courts distinguish between corporations and individuals for purposes of jurisdiction. Unlike corporations whose citizenship is determined both by its place of incorporation and by the place of its principal place of business, a large number of courts hold as to individuals who have dual citizenship that it is only the American citizenship that counts, so long as the person is domiciled here. *See Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3rd Cir. 2008) ("[a] natural person is deemed to be a citizen of the state where []he is domiciled" and "'for purposes of diversity jurisdiction, only the American nationality of a dual national is recognized'") (quoting *Frett-Smith v. Vanterpool*, 511 F.3d 396, 399-400 (3rd Cir. 2008)); *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996) ("there is an emerging consensus among courts that, for a dual national citizen, only the American citizenship is relevant for purposes of diversity"); *see also Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 711 (9th Cir. 1992)*; Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2nd Cir. 1991); *Sadat v. Mertes*, 615 F.2d 1176, 1187 (7th Cir. 1980).[1]

As noted by the Ninth Circuit, this distinction between treatment of corporations and individuals finds its source in the diversity statute, which creates a system of dual citizenships for corporations but contains no indication that the dual citizenship of an

---

[1] The case relied on by Defendants, *Intec USA, LLC v. Engle*, 467 F.3d 1038 (7th Cir. 2006), involved the citizenship of a limited liability company, not an individual. Thus, I find it is distinguishable.

individual should be considered.  *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994).  Under the above analysis, which I believe the Tenth Circuit would likely adopt, Oteng is a United States citizen for purposes of diversity as he is domiciled in Virginia.

However, I find that diversity jurisdiction is still lacking under § 1332(a)(2) based on the presence of B.D. Goldfields.  While Plaintiffs argue that corporate plaintiff Goldfields is only a nominal party because this is a shareholder derivative action being pursued by Oteng as the real party in interest, they cannot avoid the allegations of the Complaint which plainly show that Goldfields is pursuing a direct action as well.  The very heading of the Complaint alleges that Goldfields is suing both in a shareholder derivative action and in a direct action in its own right.  Further, the Complaint at ¶ 59 states that Goldfields is bringing a direct action against the Defendants.  Accordingly, Goldfields is not just a nominal party, but is also a plaintiff pursuing a direct action. Since Plaintiff Goldfields is an alien and Defendant Golden Star is an alien, there is not complete diversity.

b.    Jurisdiction Under § 1332(a)(3)

Plaintiffs also argue in response to the motion to dismiss that there is jurisdiction under 28 U.S.C. § 1332(a)(3).  That statute provides jurisdiction between "citizens of different States and in which citizens or subjects of a foreign state are additional parties."  *Id.*  This statute allows suits between citizens of different states where aliens are additional parties.  *See Karazonos v. Madison Two Assocs.*, 147 F.3d 624, 627 (7th Cir. 1998).  I first note that Plaintiffs did not cite this statute as a basis for jurisdiction in

the Complaint.  Thus, it is questionable whether it is now proper for them to rely on the statute as a basis for jurisdiction.

Second, I find that Plaintiffs cannot succeed on the merits of this issue, as jurisdiction does not exist under this statute.  First, the parties are not citizens of different "states".  While Plaintiff is a citizen of Virginia (and the United States), Golden Star is a foreign corporation.  Even if it could also be construed to be a citizen of Colorado by having its principal place of business here, an argument I previously rejected, its dual status as a foreign defendant would defeat jurisdiction.  Just as explained above in connection with § 1332(a)(2), the foreign status of the corporation must be considered for purposes of diversity jurisdiction, even if the defendant is also a citizen of the United States.

An analogous situation was discussed in *IGY Ocean Bay Properties, Ltd. v. Ocean Bay Properties I Ltd.*, 534 F. Supp. 2d 446 (S.D.N.Y. 2008).  In that case, the plaintiffs were two foreign companies (one Bahamian and one Cayman) with their principal places of business in New York.  The defendants were alien corporations plus a citizen of Florida.  The defendants tried to remove this dispute to federal court under § 1332(a)(3) arguing that the plaintiffs should be considered to be New York citizens based upon their principal place of business.  The *Ocean Bay* court ruled that " diversity does not exist within the meaning of . . . sections [1332(a)(2) and (a)(3)] where on both sides of the dispute the parties are all foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." *Id.*, 534 F. Supp. 2d at 448.  It noted that "[f]or diversity purposes, a corporation is deemed to be a citizen

both of the state in which it has its principal place of business and of any state (domestic or foreign) in which it is incorporated." *Id.* (citing § 1332(c)(1)).

The court in *Ocean Bay* further held:

> The question of diversity jurisdiction for corporations with dual citizenship is not an either/or proposition in which the parties on either side of the dispute (or the Court for that matter) are given a choice to decide which citizenship applies in any particular case and thus to determine the existence of diversity jurisdiction based on that one citizenship. Rather, for this Court to exercise jurisdiction over a matter, the diversity test must be satisfied under both citizenships.
>
> . . .
>
> In this Court's reading of § 1332(a)(3), Plaintiffs are neither just domestic citizens, nor just "additional parties." Rather, they are dual citizens, and diversity jurisdiction must be determined by looking at both of their citizenships. If diversity fails under either of the parties' citizenships, then diversity fails overall. . . . There is no warrant for the Court, no more than there is for either side of the parties, to pick and choose and to look solely at the principal place of business or solely at the state of incorporation to determine that diversity exists.

*Id.* at 448-49 (internal citations omitted).

I find that this case supports my decision that jurisdiction does not exist under either 28 U.S.C. §§ 1332(a)(2) or (a)(3). Accordingly, I find that the motion to dismiss should be granted as to lack of subject matter jurisdiction because Plaintiffs have not shown that diversity jurisdiction exists under the above statutes.

2.  Lack of Subject Matter Jurisdiction Based on Standing

Defendants also argue under Rule 12(b)(1) that the Court lacks subject matter jurisdiction over this case because Plaintiffs lack standing to pursue this litigation under Ghanian law. I agree and find that this provides another basis for dismissal of this case.

Turning to my analysis, standing is a threshold issue that implicates a federal court's subject matter jurisdiction. *See Day v. Bond*, 500 F.3d 1127, 1132 (10th Cir.

2007).  The court must satisfy itself that the parties have standing to invoke the power of the federal courts.  *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1280 (10th Cir. 2002).  The burden to establish standing rests on the party invoking federal jurisdiction, in this case, the Plaintiffs.  *Id.*

I agree with Defendants that whether Plaintiffs have standing must be determined under Ghana law because Goldfields is a Ghanian company.  Corporations generally are governed by the law of incorporation.  *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 90 (1987).  Plaintiffs also appeared to believe when they filed their Complaint that Ghanian law was applicable.  Compl. ¶ 54 (noting that shareholder derivative suits are authorized by the Commercial Code of Ghana); Pl.'s Fed. R. Civ. P. 44.1 Notice ("Plaintiffs . . . will raise issues . . . about the common and statutory law of Ghana as to corporations").

Further, it appears under either conflict of law test that might be used by Colorado that Ghana law would be found to apply.[2]  First, Colorado may analyze which state has the most significant relationship to the claims at issue.  *See AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 508 (Colo. 2007) (noting that Colorado has adopted the general rule of applying the law of the state with the most significant relationship with the occurrence and the parties).  Here, Goldfields, the corporation that Oteng brings suit on behalf of derivatively, is incorporated in Ghana.  The claims all relate to ownership of a gold concession that is located in Ghana.  Defendant Golden

---

[2]  Colorado law applies because in diversity cases, federal courts apply the conflict of law principles of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Galef v. Alexander*, 615 F.2d 51, 58 (2nd Cir. 1980).

Star has presented uncontested evidence that it conducts all of its current productive gold mining operations in Ghana and has an office there, and that it makes all of the day to day operational decisions about the concession in Ghana.  Further, it appears that many of the issues raised in the Complaint involving the ownership, operation and control of the concession were litigated in Ghana years ago, and this case may implicate decisions of the Ghanian courts.  Accordingly, I find that Ghana has the most significant relationship to this case.

Second, Colorado may apply the conflict of law rule that looks to the country where Goldfields is incorporated, in this case Ghana.  This is known as the "internal affairs" doctrine, which provides that the right of a shareholder in a foreign company (including the right to sue derivatively) are determined by the law of the place where the company is incorporated.  *In Re BP p.l.c. Derivative Litig.*, 507 F. Supp. 2d 302, 307 (S.D.N.Y. 2007); *see also Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) ("the internal affairs doctrine is a conflict of laws principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs . . . ").  The internal affairs choice of law rule as applied to issues regarding corporations "is well established and generally followed throughout this country".  *Hausman v. Buckley*, 299 F.2d 696, 702 (2nd Cir. 1962).  Under either test that Colorado might employ, Ghanian law would appear to control the issue of whether Plaintiffs have standing to bring this action.

I thus turn to whether Plaintiffs have standing under Ghanian law to bring this suit.  Defendants have presented an expert in Ghanian law who has opined that Plaintiffs' complaint does not meet the requirements for a shareholder derivative suit.  *See* Affidavit of Innocent Koku-Akpaka Akwayena, Legal Practitioner and Notary Public

in the Republic of Ghana, in Support of Motion to Dismiss  ["Akwayena Affidavit"].  Rule

44.1 of the Federal Rules of Civil Procedure states that "[i]n determining foreign law, the

court may consider any relevant material or source, including testimony, whether or not

submitted by a party or admissible under the Federal Rules of Evidence."  Based on this

Rule, I find that the affidavit can properly be considered by me in deciding this issue.

While Plaintiffs argue that Akwayena is biased, they did not present any evidence

to rebut the Akwayena Affidavit.  Instead, they argue that the Court can read the

Ghanian Companies Code for itself and make a determination that Plaintiffs  complied

with the requirements of the Code in bringing this suit.  This Code is attached to the

Akwayena Affidavit as Exhibit B, referred to as "The Hundred and Seventy-Ninth Act of

the Parliament of the Republic of Ghana Entitled The Companies Code, 1963"

[hereinafter "the Ghanian Companies Code"].  There are three main sections of the

Ghanian Companies Code that are relevant to this analysis: sections 137(b)(5), 210 and

324(a).  I have reviewed those sections and all other provisions of the Ghanian

Companies Code referenced at the hearing by Plaintiffs' counsel and find that Plaintiffs

have not met their burden of showing that they are authorized to bring this suit.

Section 137(5)(b) of the Ghanian Companies Code states that "the members in

general meeting . . . may institute legal proceedings in the name of and on behalf of the

company if the board of directors refuse or neglect to do so."  Here, the lawsuit was not

initiated by the members of Goldfields "in general meeting."

Section 210(1) authorizes a member of the company to bring proceedings to

enforce liabilities or to restrain a threatened breach of duty by a director.  Plaintiffs

claimed at the hearing on this matter that the claims do not fall within the purview of

Section 210(1).  I disagree, as the claims clearly appear to relate to threatened and/or actual breaches of duty by Hayford,  "the largest shareholder and managing director" of Goldfields.  Compl., ¶ 27(b).  Specifically, the Complaint alleges self-dealing and ultra vires conduct by Hayford, as well as a failure to discharge fiduciary duty.  *Id.*, ¶¶ 9(c), 11(b), 12, 18, 40.  The Complaint asserts that Defendants are making U.S. currency payments to Hayford to induce him to help Defendants acquire title or assignment of Goldfields' gold concessions in Ghana.  *Id.*, ¶¶ 9(c), 11(b), 12, 18, 40.  Plaintiffs seek a declaratory judgment that the Adum Banso gold concession has not been contractually sold or assigned to the Defendants, and that Hayford was not authorized by Goldfields to sell 80% of the concession to Defendants.  *Id.*, ¶¶ 44, 62. They also seek a preliminary injunction and an accounting.  ¶ 64-68.

Since I find that the claims at issue are governed by Section 210, this action must be instituted on "the authority of the board of directors" or "of an ordinary resolution of the company which shall either have been agreed to by all members of the company entitled to attend and vote at a general meeting or have been passed at a general meeting."  § 210(2).  Here, there is no evidence of a resolution of the company agreed to by all members of the company.  Further, there is no evidence that a resolution to allow the suit was passed at a general meeting of the company.

Plaintiffs also rely on Section 324(a) of the Code as authorizing the suit.  I find that Section 324(a) does not vitiate the requirements of Section 210 of the Code.  It provides that a person who is authorized to sue in a representative capacity may commence the proceedings without obtaining the consent and approval of any other member of the class represented.   Here, however, under Section 210, Oteng was not

authorized to sue in a representative capacity as explained above.  Plaintiffs also have

not provided any authority under Ghanian law that Section 324(a) of the Companies

Code supports the filing of this action, and the Akwayena Affidavit supports my

interpretation that this section and the other provisions of the Companies Code do not

authorize the commencement of this suit by Oteng on behalf of Goldfields.

Further, while they argue futility, Plaintiffs have not pointed to anything in the

Ghanian Companies Code or Ghanian law that applies such a concept to shareholder

derivative suits.  Further, Defendants point out in their reply brief that the Ghanian

Companies Code contains numerous provisions whereby a general meeting could have

been obtained.  Yet Plaintiffs failed to take advantage of those provisions.

Based on the foregoing, I find that Plaintiffs have not met their burden to show

that they have standing under Ghanian law to bring this shareholder derivative suit.  I

also find that Plaintiff Oteng has not met his burden of showing that he has standing

under Ghanian Law to bring a direct action on behalf of Goldfields.  Accordingly, I find

that dismissal is appropriate based on a lack of standing.  *See Hausman*, 299 F.2d at

705-06 (2nd Cir. 1962) (affirming dismissal of case because under New York conflict of

law rules, Venezuelan law providing that stockholder may not sue on behalf of

corporation operated to bar the action); *Seybold v. Groenink*, No. 06 Civ. 772(DLC),

2007 WL 737502 (S.D.N.Y. 2007) (dismissing shareholder derivative suit based on lack

of standing because Dutch law did not permit shareholder to pursue the shareholder

derivative action).

B.     Defendants' Motion for Costs, including Attorneys' Fees, and for Stay of Proceedings Pursuant to Fed. R. Civ. P. 41(d)

This motion, filed pursuant to Rule 41(d) of the Federal Rules of Civil Procedure, seeks an assessment of costs, including reasonable attorneys' fees, against Plaintiffs and for a stay of these proceedings until payment of such costs had been made. Defendants assert that this assessment of costs and fees is appropriate since Plaintiffs previously dismissed an action in another federal court based upon the same claims. The case was captioned *B.D. Goldfields, Ltd. v. Golden Star Resources Ltd. et al.*, 08-cv-00916-ESH and was filed in the United States District Court for the District of Columbia.  In that case, Defendants retained counsel and filed a motion to dismiss, after which Plaintiffs dismissed the case.  Defendants argue that this caused them to incur needless costs and expenses in their defense.  Defendants also sought a stay of this case until payment of such costs was made.

FED. R. CIV. P. 41(d), entitled "Costs of a Previously Dismissed Action", states:

If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:

(1) may order the plaintiff to pay all or part of the costs of that previous action; and

(2)) may stay the proceedings until the plaintiff has complied.

*Id.*

I first deny as moot the request to stay the case pending payment of the fees and costs.  This request is moot since I granted Defendants' Motion to Dismiss.

As to the request that I assess fees and costs against Plaintiffs, the decision whether to impose costs and attorneys' fees under Rule 41(d) is within the discretion of

-17-

the trial court.  *See Meredith v. Stovall*, No. 99-3350, 2000 WL 807355, at *1 (10th Cir.

2000); *Wason Ranch Corp. v. Hecla Mining Co.*, No. 07-cv-00267-EWN-MEH, 2008 WL

906110, at *16 (D. Colo. 2008).  "The purpose of the rule is to prevent the maintenance

of vexatious law suits and to secure, where such suits are shown to have been brought

repetitively, payment of costs for prior instances of such vexatious conduct." *Meredith*,

2000 WL 807355 at *1.  No showing of bad faith is required before costs may be

imposed on the plaintiff under Rule 41(d), but the plaintiff's motive in dismissing the prior

action may be taken into account.  *Wason Ranch*, 2008 WL 906110, at *17 (citing

cases); *Esquivel v. Arau*, 913 F. Supp. 1382, 1386 (C.D. Cal.1996) (quoting *Simeone v.

First Bank Nat'l Ass'n*, 971 F.2d 103, 108 (8th Cir.1992)).

There appears to be a split of authority as to whether Rule 41(d) authorizes

attorneys' fees as part of an award of "costs," but the majority of courts find that

attorneys' fees are available under Rule 41(d).  *Wason Ranch*, 2008 WL 906110, at *17

(citing *Duffy v. Ford Motor Co.*, 218 F.3d 623, 632 (6th Cir. 2000)).  The Tenth Circuit

indicated in its unpublished opinion in *Meredith* that an award of attorneys' fees may be

appropriate as part of an award of costs under Rule 41(d).  *Meredith*, 2000 WL 807355,

at *1; *see also Wason Ranch Corp.*, 2008 WL 906110 at *17.

There is authority, however, that the court should not impose any costs

associated with work that will still be useful to the defendants in the instant litigation.

*Esquivel*, 913 F. Supp. at 1388.  Further, it appears that a court may refuse to award

costs under Rule 41(d) where the plaintiff is financially unable to pay the costs. *Zucker

v. Katz*, 708 F. Supp. 525, 538 (S.D.N.Y. 1989) (citing  9 C. Wright & A. Miller, Federal

Practice and Procedure § 2375 at 244 (1971)).

In *Esquivel*, the court granted a request for fees and costs in an arguably similar case, stating:

> Esquivel's choice of the Southern District of New York as a forum was questionable, to say the least. As an initial matter, it is clear that the plaintiff bears the responsibility of determining the appropriate forum in which to prosecute her case, . . . and of establishing that personal jurisdiction exists. Defendants' motion to dismiss in the Southern District action pointed out that neither party is a citizen or resident of New York, the complaint made no allegations of acts taking place in New York giving rise to the claims, the various agreements at issue were all executed outside of New York, and none of the witnesses or documents are in New York. Given that the causes of action are not clearly related to the forum activities of Arau or the other defendants, Esquivel would be required to show "substantial" or "continuous and systematic" contacts with the forum state to satisfy the requirements of federal due process. Esquivel's stated reasons for filing her action in the Southern District do not satisfy this standard. Her decision to refile her action in the Central District of California and then file the notice of dismissal in the Southern District action without responding to defendants' motion to dismiss for lack of personal jurisdiction appears to have been a recognition that her suit in the Southern District was vulnerable on the grounds asserted in the motion.

*Id.* at 1387.

The court concluded in that case that Esquivel "failed to present a persuasive explanation for the course of litigation described above, and it is clear that defendants have incurred needless expenditures as a result." *Id.* at 1388. Thus, it found that an award under Rule 41(d) was appropriate. *Id.*; *see also Loubier v. Modern Acoustics, Inc.*, 178 F.R.D. 17, 19 (D. Conn. 1998) (fees and costs awarded under the rule where the plaintiffs filed a motion to dismiss in a prior suit for lack of subject matter jurisdiction after which the plaintiffs voluntarily dismissed the case).

In the case at hand, I find that Rule 41(d) is applicable, despite Plaintiffs'
arguments to the contrary.  A comparison of complaints in the two cases show that they
are almost verbatim.  Further, it appears in both cases that Oteng was pursuing a
shareholder derivative action, contrary to Plaintiffs' argument.  I also note that Plaintiffs
do not show that they had any persuasive justification or good reason for voluntarily
dismissing the first action, then filing a nearly identical second action.  Indeed, they only
thing that Plaintiffs say about the first action is that they voluntarily dismissed it after
they realized that the Defendants' filings with the SEC were not as extensive as they
thought.  That seems a very weak basis for having tried to assert jurisdiction in the
previous case.

While I find that fees and costs should be assessed, I have considered the fees
sought by Defendants and find in my discretion that it is not appropriate to award the full
amount of $40,000 sought by Defendants.  See Affidavit of Tom McNamara, Ex. 4 to
Defs.' Mot. for Costs, Including Attorney Fees, and for Stay of Proceedings Pursuant to
Fed. R. Civ. P. 41(d) [hereinafter Motion for Costs"].  Instead, I have taken into account
the fact that many of the costs incurred in the previous action were likely useful to
Defendants in this case. *See Esquivel*, 913 F. Supp. at 1388.  Indeed, I have compared
the motion to dismiss filed in the previous case (Ex. 3 to Motion for Costs)
with the motion to dismiss in this case and find that many of the arguments are the
same (albeit with some difference in case authorities cited).

Further. I have taken into account Plaintiffs' argument that they are financially
unable to pay the costs, although I note that they did not provide substantiation for this
argument.  Finally, I have reviewed the reasonableness of the invoices of the fees

sought and note that there were often multiple counsel assigned to the tasks.  Taking

into account all of the foregoing, I find that an award of costs and fees to Defendants in

the amount of $15,000 is appropriate and reasonable in this case.

III.    CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant St. Jude Resources, Ltd. is **DISMISSED** pursuant to

FED. R. CIV. P. 41(a)(1)(A)(i).  It is

FURTHER ORDERED that Defendants' Motion to Dismiss (Doc. # 13) is

**GRANTED** as to Defendant Golden Star Resources, Ltd. consistent with this Order and

this case is **DISMISSED**.  It is

FURTHER ORDERED that the Motion for Costs, including Attorneys' Fees, and

for Stay of Proceedings Pursuant to Fed. R. Civ. P. 41(d) (Doc. # 20) is **GRANTED IN**

**PART** as to the request for costs and fees and **DENIED AS MOOT** as to the request for

a stay.  Defendants are awarded costs and attorneys' fees under Rule 41(d) in the

amount of $15,000.00.  Plaintiffs shall pay such fees and costs to Defendants within

**thirty (30) days** of the date of this Order.

Dated:  May 8, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge